## James Dennie *versus* Samuel D. Harris.

Goods imported by a person indebted to the United States on customhouse bonds which had fallen due, were on their arrival attached at the suit of a private creditor by a deputy sheriff, who offered to give security for the payment of the duties, but which the collector declined accepting, and were deposited in the customhouse store, the storekeeper giving a certificate that he held them subject to the order of the deputy sheriff. The marshal of the United States afterwards attached and took the same goods on a writ in favor of the United States upon the bonds above mentioned. *Held* that the marshal was liable to the deputy sheriff in an action of trespass.

*It seems* that the United States had no lien on the goods thus deposited in the customhouse store, for the payment of duties previously due from the importer.

Whether goods imported are attachable before the duties on them are paid or secured, *quære.*

TROVER for certain merchandise.

On a case agreed by the parties it appeared, that the merchandise was brought in a vessel of the United States into the port of Boston, from a foreign port, prior to the commencement of this action, consigned to George DeWolf and John Smith. Soon after the arrival of the vessel, the collector of the port caused an inspector of the customs to be placed on board. Before the entry of the merchandise with the collector and the payment or any security for the payment of the duties thereon, and before the inspector was put on board the vessel, the plaintiff, as a deputy of the sheriff of the county of Suffolk, attached the merchandise as the property of DeWolf and Smith, by virtue of several writs of attachment in favor of A. B. Blanchard and others. At the time of the attachment the plaintiff offered to give the collector security for the payment of the duties ; which he declined accepting. About seventeen days after the attachment, the merchandise being in the customhouse stores under the following agreement, — viz : " District of Boston and Charlestown. Port of Boston, August 29, 1826. I certify that there has been received into store from on board the brig Rob Roy whereof ———— is master, from Canton, the following merchandise, to wit : twenty-three cases silks, A. O. 1 to 23, lodged by D. Rhodes jun. inspector, under whose care the

Dennie
*v.*
Harris.

vessel was unladen. B. H. Scott, public-store-keeper. I hold the above described twenty-three cases silks subject to order of James Dennie Esq. dep. sheriff. B. H. Scott:" — the defendant, being the marshal of the United States for the district of Massachusetts, attached and took the same merchandise by virtue of several writs in favor of the United States against DeWolf, duly issued from the District Court of the United States. These writs were founded on bonds for duties given by DeWolf and Smith, amounting to a sum much larger than the value of the merchandise, which were due and unpaid at the time of the arrival of the vessel.

The question was, whether under the acts of Congress imposing duties on merchandise imported into the United States from foreign ports, and more especially, whether under the acts regulating the collection of such duties, the merchandise in question could lawfully be held upon the attachment of the defendant, to satisfy the debts above mentioned due to the United States.

*Apn. 3d.*     *Blake* (District-Attorney of U. S.) contended, that the attachment by the plaintiff was void ; that the United States had a lien on the goods, not only for the duties with which they were chargeable, but likewise for all antecedent debts of the importer on customhouse bonds ; that the collector was obliged to refuse the security of the plaintiff, for that no one except the importer or consignee, or the agent or legal representative of the importer or consignee, can enter goods and give bond ; that goods imported cannot be attached until they are entered and the duties paid or secured ; and that the defendant could not commit a trespass against the plaintiff by taking the goods in question, for that the collector had not parted with them, and by act of Congress, of March 2d, 1799, c. 128, § 36, 56, could not do so, until the lien should be legally dissolved. He relied on § 62, 65, of that act, and the form of the bond in § 62. *United States* v. *Lyman*, 1 Mason, 482. He also remarked that the certificate of the storekeeper, that he held the goods subject to the plaintiff's order, was unauthorized by law. Same act, § 56.

122      *Shaw* and *Bartlett, contrà*, said the object of § 62 was not

.o create a lien or give a priority to the United States, but    Dennie
to prevent a debtor to the United States from obtaining a       *v.*
new credit at the customhouse ; act of Congress, August 4,    Harris.
1790, *c.* 35, § 41 ; *Olney* v. *Arnold,* 3 Dallas, 308 ; 1 Ma-
son, 482 ; that the United States have no priority except in
the cases provided for in § 65 of the act of 1799 ; *United
States* v. *Hooe,* 3 Cranch, 73 ; *Watkins* v. *Otis,* 2 Pick.
101 ; that the defendant was estopped by the agreement of
facts, to deny that he took the goods out of the plaintiff's
custody ; that the attachment by the plaintiff and the lien of
the United States for the duties on the particular goods might
co-exist, and if the plaintiff could not remove the lien by
giving bond, he certainly might by tendering or paying the
duties ; but that whatever might be the rights of the collector,
he was not a party to this suit, and if the plaintiff had pos-
session sufficient to maintain trespass against a stranger, the
action was supported.

   *Blake,* in reply, said that even admitting the plaintiff might
tender or pay the duties, (which he denied,) it did not ap-
pear that he had so removed the lien ; and that if the property
was to be considered as being in the possession of the col-
lector, that is, of the United States, the doings of the marshal
would operate only to confirm the possession of the United
States.

   The opinion of the Court was drawn up by

   PARKER C. J. The contest in this action is between a   *Aug.* 1827
deputy of the sheriff of the county of Suffolk, who, acting under   *at Taunton*
a lawful precept under the authority of the commonwealth,
attached the goods, to respond a debt due from the owners,
and the marshal of the United States, who, acting under a
precept of the District Court, seventeen days afterwards
attached the same goods on behalf of the United States, to
secure debts due to them from the owners of the goods,
arising from duties on goods formerly imported by them. If
the creditor on whose behalf the plaintiff acted, has equal
rights with the United States, in regard to obtaining security
for his debts, then the case is clearly with the plaintiff, on
account of his priority in the attachment.

   But it is contended by the district-attorney, that the attach-     **123**

Dennie
v.
Harris.

ment of the United States should have preference, because they have a lien upon the goods of their debtors, whenever imported, for all debts due at the customhouse, notwithstanding such goods may have been purchased and imported long after the debt accrued and became payable; and that the debts due from the importers of these goods, for duties on goods previously imported and secured by bond, exceeded in amount the whole value of the goods which are the subject of this action, so that there was nothing left to be attached by the plaintiff on his writ, and therefore that he cannot maintain this action. The consequences of this claim on the part of the United States are so extensive, and, we fear, so mischievous to the commercial part of the community, that we cannot yield to it, unless we find some express provision in the laws of the United States which gives it sanction. It appears to us, that if it shall be finally established and enforced, it will go far to put an end to all commercial credit, and have a very serious effect on commerce itself. No such claim, we think, has ever before been set up, notwithstanding the statute on which it is said to rest has been in force nearly thirty years, and during that time innumerable attachments have been made by private citizens on goods imported by their debtors, who at the same time have been indebted to the United States.[1] The lien of the government upon the goods for the duties with which they are chargeable, has always been admitted, and the duties have either been paid or secured, or the goods placed in the public stores, until the public has been satisfied. The proceedings in the present case were probably according to a custom of long standing in regard to goods so situated. It not being possible to remove the lien at the time of the attachment, because the duties were not ascertained, they were deposited by the attaching officer in the store of the customhouse, under the following official certificate, — District of Boston, &c. [as before recited.] By this transaction Scott became the bailee of the goods for the plaintiff, bound to deliver them to him on pay-

---

[1] See *Conrad* v. *Atlantic Ins. Co.* 1 Peters, 386; *Harris* v. *Dennie*, 3 Peters, 292; *Hodges* v. *Harris*, 6 Pick. 360; *Dennie* v. *Harr's*, 9 Pick. 364.

ment or security for the duties and charges ; and this must
be presumed to have been with the consent of the United
States, for Scott is under the control and acts under the
orders of the collector of the district ; and the consent of
the United States, that the attachment should hold notwith-
standing their lien was not removed by payment of the duties,
must be presumed from the agreement of their officer to hold
the goods subject to the order of the deputy sheriff, the
plaintiff.    And this we are authorized to say is the usual
mode of conducting, in regard to goods attached which are
subject to duties ; as appears from a certificate of the collec-
tor to that effect, viz.  " That goods attached previous to the
duties being secured, are taken into the customhouse store,
and there detained until the duties are paid or secured."

Indeed there is no other way of preserving the rights of
creditors and of the United States at the same time ; for the
lien being uncertain as to its amount, the duties cannot be
paid until entry is made and the cost or value of the goods
ascertained.    When the marshal took the goods by attach-
ment, they were lawfully in the custody and possession of
the plaintiff, and therefore the taking was a trespass ; so that
between the plaintiff and defendant there can be no question
in the present action ; for the defendant is acting for a creditor
who stands upon the same footing with other creditors, and
must yield to those who have obtained the priority.    The
question whether these goods were attachable or not, does
not present itself in the case before us ; for they were in the
possession of the plaintiff claiming to hold them by virtue of
an attachment.    The more general question should be tried
between the United States and the attaching officer, in a dif
ferent form.[1]

_Dennie_
_v._
Harris.

124

---

[1] This decision has been reversed in the Supreme Court of the United
States, where it was held, that the attachment made by the State officer, of
the goods mentioned in the above case, was an interference with the right
of lien upon and custody of the same existing in the United States, and that
the attachment, being repugnant to the laws of the United States, was void
_Harris_ v. _Dennie_, 3 Peters, 292.   See also _Dennie_ v. _Harris_, 9 Pick. 364.